UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:11-cv-369-FDW-DCK

| | |
|---|---|
| MEINEKE CAR CARE CENTERS, INC., <br><br>Plaintiff, <br><br>vs. <br><br>VINCENT BICA and DINA BICA, <br><br>Defendants. | PRELIMINARY INJUNCTION ORDER |

THIS MATTER is before the court on Plaintiff's Verified Complaint and Motion for a Preliminary Injunction (Doc. No. 2), and Plaintiff's Memorandum of Law in Support of Its Motion for a Preliminary Injunction (Doc. No. 3). Defendants responded in opposition to the motion (Doc. No. 14), to which Plaintiff replied (Doc. No. 15). On Wednesday, October 5, 2011, the Court conducted a hearing where the Court received oral argument on the instant motion.

For the reasons that follow, this Court will <u>grant</u> Plaintiff Meineke Car Care Centers, Inc's ("Meineke") motion for a preliminary injunction enjoining Defendants Vincent Bica and Dina Bica's continued use of the Meineke trademark and enjoining the Bicas' continued breach of a covenant not to compete.

## FACTS

This motion arises out of Defendants' refusal to abide by the post-termination obligations contained in their Franchise Agreement with Meineke and violations of the Lanham Act.

On August 22, 2000, Defendants entered into a Meineke Franchise and Trademark Agreement ("Franchise Agreement") with Meineke, which granted them the right to operate a Meineke Center located at 92 Main Street, Norwalk, Conneticut, 06851. (Doc. No. 1, Compl. ¶ 21;

see also Doc. No.1-1). Under the Franchise Agreement, Meineke authorized Defendants to operate an auto repair center under the trade name "Meineke," display the Meineke name, receive training and access to Meineke's methods, and participate in an established network of licensed repair centers. (Compl. ¶ 22). Defendants also agreed to pay Meineke weekly franchise fees and to provide Meineke with accurate weekly business reports of gross revenue. (Compl. ¶ 23).

At some point during the term of the Franchise Agreement, Defendants breached their obligations by failing to pay franchise and advertising fees and failing to submit weekly business reports. (Compl. ¶ 25). On December 15, 2010, Meineke sent Defendants a Notice of Default and informed them that if they did not cure the defaults within five (5) business days, Meineke could terminate their franchise license. (Compl. ¶ 26). Meineke subsequently notified Defendants that it would continue the December 15, 2010, Notice of Default and give Defendants an additional sixty (60) days to cure their defaults. (Compl. ¶ 27). Defendants failed to cure the defaults, and Meineke terminated their license effective April 4, 2011. (Compl. ¶ 28). On May 26, 2011, Meineke negotiated terms for reinstatement of Defendants' franchise license and tendered to Defendants a Reinstatement Letter outlining the requirements for reinstatement, including the requirement that Defendants execute the Reinstatement Letter within five days of receipt. (Compl. ¶ 29). To date, Defendants have not executed the Reinstatement Letter. (Compl. ¶ 30).

The Franchise Agreement contained a series of post-termination obligations, including obligations (1) to pay Meineke "all royalties . . . amounts owed for purchases from [Meineke] or [its] Affiliates, interest due on any of the foregoing and all other amounts owed . . . ," (2) to "not directly or indirectly at any time or in any manner use any Mark, . . . or any other indicia of a Meineke Center," and (3) to "discontinue using for any purpose, all signs, fixtures, posters, decor items, advertising materials, forms and other materials and supplies which display any of the Marks . . .

associated with Meineke." (Doc. No. 1-1, Franchise Agreement ¶¶ 15.1-2.)

The Franchise Agreement also contained a non-compete clause that prohibited Defendants, for a period of one year after termination, from:

> directly or indirectly . . . own[ing] a legal or beneficial interest in, manag[ing], operat[ing], or consult[ing] with: (a) any Competitive Business located at the Premises [of Defendants' former Meineke Center]; (b) any Competitive Business located within a radius of 6 miles of [the Premises]; (c) any Competitive Business located within a radius of 6 miles of any Meineke Center in operation on the effective date of termination or expiration.

(Doc. No. 1-1, Franchise Agreement ¶ 11.4).

Notwithstanding the Franchise Agreement, Defendants continue to operate a competing business from the premises of the former Meineke Center. (Compl. ¶ 34). Defendants are also using Meineke's trademarked name on or about the premises of the former Meineke center and offering the same services as they did when they operated an authorized Meineke franchisee. (Compl. ¶¶ 34-35.)

Meineke filed a complaint and this motion requesting that the Court enter a Preliminary Injunction on two accounts: enjoining Defendants' continued use of Meineke's trademark and enjoining Defendants' breach of the covenant not to compete.

## ANALYSIS

### A. Standard for Granting Preliminary Injunction

Preliminary injunctions are an extraordinary remedy whose primary function is to protect the status quo and to prevent irreparable harm during the pendency of a lawsuit. In re Microsoft Corp. Antitrust Litigation, 333 F.3d 517, 525 (4th Cir. 2003). A plaintiff seeking a preliminary injunction or temporary restraining order ("TRO") must give notice to the opposing party under Federal Rule of Civil Procedure 65 and establish all four of the following elements: (1) plaintiff is

-3-

likely to succeed on the merits; (2) plaintiff is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of the equities tips in plaintiff's favor; and (4) an injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 129 S.Ct. 365, 374 (2008); Moore v. Kempthorne, 465 F. Supp. 2d 519, 525 (E.D. Va. 2006) ("[t]he standard for granting either a TRO or a preliminary injunction is the same"). The most recent Supreme Court test was adopted by the Fourth Circuit in The Real Truth About Obama, Inc. v. Fed. Election Comm'n, 575 F.3d 342, 346-47 (4th Cir. 2009), vacated on other grounds, 130 S.Ct. 2371, 176 L.Ed.2d 764 (2010)(memorandum opinion), reissued in pertinent part, 607 F.3d 355 (4th Cir. 2010), overruling Blackwelder Furniture Co. v. Selig Mfg. Co., 550 F.2d 189 (4th Cir. 1977). In Winter, the Supreme Court emphasized that a plaintiff must demonstrate more than just a "possibility" of irreparable harm and a strong showing of likelihood of success on the merits. Winter, 129 S.Ct. at 375.

For the reasons articulated below, Meineke has established all four requirements needed to obtain a preliminary injunction for both claims.

**B. Trademark Infringement**

First, Meineke has made a clear showing of likelihood of success on the merits with regard to its trademark infringement claim by showing (1) that it has a valid, protectable trademark and (2) that Defendants have engaged in an unauthorized use of Meineke's mark that is likely to cause confusion among consumers. To succeed on a trademark infringement claim, the plaintiff must show that its trademark was used by the defendant without its consent and that the unauthorized use was likely to cause confusion. Burger King Corp. v. Mason, 710 F.2d 1480, 1491 (11th Cir. 1983).

Here, Defendants concede they continue to operate an automotive repair business on the premises bearing Meineke's trademarked name without permission. Defendants admit the premises also prominently displays a pole sign bearing Meineke's marks on the exterior of the building, but

-4-

contends that because they painted over the Meineke name on the sign, no confusion exists. Defendants also admit they continue to use at least one of the phone numbers associated with and advertised exclusively in conjunction with Meineke's trademarked name and marks.

Meineke expressly revoked Defendants' authorization to use the trademark in its Notice of Termination to Defendants, and Defendants failed to accept Meineke's offer to reinstate the license when they failed to execute the Reinstatement Letter. In <u>Burger King Corp</u>, the Court held that "continued trademark use by one whose trademark license has been cancelled satisfies the likelihood of confusion test and constitutes trademark infringement." <u>Id.</u> at 1492. For similar reasons, a franchisees' continued use of the telephone numbers that had been used in conjunction with the franchisor's name and marks also creates a likelihood of customer confusion. See <u>Cottman Transmission Systems, Inc., v. Melody</u>, 851 F. Supp. 660 (E.D.Pa. 1994). The Court finds that Defendants' use of Meineke's trademarked name to provide nearly identical services at the same location where the Meineke franchise operated using the identical contact information (including phone numbers) certainly indicates to this Court that Defendants' continued conduct is likely to cause customer confusion concerning the origin of goods or services. The Court is unpersuaded by Defendants' argument that customers and potential customers are not likely to be confused but are instead more likely to believe the shop was a former Meineke shop and no longer operates as such. Bearing in mind the standard of review at the preliminary injunction stage, the Court finds that the evidence–much of which is admitted by Defendants–regarding the unauthorized use of the Meineke trademark demonstrates that Meineke is likely to succeed on the merits of its trademark infringement claim.

Second, Meineke has made a clear showing that it will likely suffer actual, imminent, and irreparable harm if the Court does not grant the requested preliminary injunction. In <u>Lone Star</u>

Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc., 43 F.3d 922, 939 (4th Cir. 1995), the Court acknowledged that the "irreparable injury necessary for injunctive relief regularly follows from trademark infringement." Here, Meineke will be harmed in the form of damage to its goodwill and reputation with consumers, loss of customers, and corresponding lost sales. Thus, Meineke satisfies the irreparable harm element needed to obtain a preliminary junction

Third, the balance of equities tips in favor of Meineke because Meineke will suffer immediate and irreparable harm whereas Defendants will suffer little, if any harm. Additionally, any harm Defendants may suffer would be self-inflicted. Defendants agreed to certain consequences in the Franchise Agreement for failing to abide by the terms of the Agreement. In S & R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 379 (3rd Cir. 1992), when a franchisor sought a preliminary injunction to enjoin the defendant from using the Jiffy Lube trademark, the Court held that "self-inflicted harm is far outweighed by the damage done by the infringement of its trademark." Thus, the balance of equities tips in favor of Meineke.

Fourth, granting the preliminary injunction is in the public interest because the public could be deceived and confused by Defendants' unauthorized use of the Meineke name. In S & R Corp., the Court held that, "Where a likelihood of confusion arises out of the concurrent use of a trademark, the infringer's use damages the public interest." 968 F.2d at 379. Since Defendants' use of Meineke's trademark is likely to confuse the public, it is in the public's interest for the Court to grant Meineke's motion for preliminary injunction.

Therefore, because Meineke satisfies the four elements needed to obtain a preliminary injunction on its trademark infringement claim, the Court grants Meineke's motion as to this claim.

**C.  The Covenant Not to Compete**

First, Meineke has made a clear showing of likelihood of success on the merits with regard to its covenant not to compete. The covenant was written and agreed to by the parties in Article 11.4 of the Franchise Agreement and was based upon valuable consideration. A covenant not to compete is valid in North Carolina[1] if : 1) it is reasonably necessary to protect the legitimate interests of the person seeking enforcement; 2) it is reasonable with respect to time and territory; and 3) it does not interfere with the interest of the public. Bicycle Transit Auth. v. Bell, 314 N.C. 219, 226 (1985).

Here, enforcement of the covenant not to compete is necessary to protect the legitimate business interests of Meineke. Meineke has expended substantial resources developing its processes, manuals, advertising materials, etc. and on building goodwill and obtaining a national reputation as a provider of automotive services. By signing the Franchise Agreement, Defendants recognized and took advantage of the value of the confidential and proprietary information Meineke gave them. During the term of their agreement with Meineke, Defendants received training, assistance, and a protected territory in which to build a successful automotive business. If the Court allows Defendants to continue operating their store in violation of the covenant not to compete, Defendants will be able to use the confidential and proprietary information they acquired from Meineke to take business away from it.

The covenant is also reasonable in time and territory. The one-year restriction is reasonable because other courts have upheld periods in excess of one year in similar circumstances. See e.g. Keith v. Day, 343 S.E.2d 562, 567-68 (N.C. Ct. App. 1986) (two-year covenant reasonable);

---

[1] The Franchise Agreement contains a Choice of Law Provision (§17.1) stating, "This agreement and all issues arising from or relating to this Agreement will be governed by and construed under the laws of the State of North Carolina…" (Doc. No. 1-1, p. 33). Both North Carolina and Connecticut courts recognize the validity of such choice of law provisions. Sawyer v. Market America, Inc., 661 S.E.2d 750, 794 (N.C. Ct. App. 2008); Valley Juice Ltd., Inc. v. Evian Waters of France, Inc., 87 F.3d 604, 608-09 (2d. Cir. 1996) ("'Contract clauses which require the application of the laws of other states upon breach or dispute are recognized as proper in Connecticut.'") (quoting Syncsort v. Indata Servs., 541 A.2d 543, 545, 14 Conn.App. 481 (1988); other citations omitted).

Triangle Leasing Co., Inc. v. McMahon, 393 S.E.2d 854, 858 (N.C. 1990) (two-year restriction reasonable). The territory of a six (6) mile radius is also reasonable because it is clearly within the range of what North Carolina courts have deemed reasonable in similar circumstances. See e.g. Keith, 343 S.E.2d at 567-68 (greater Raleigh area was reasonable); Forrest Paschal Mach. Co. v. Milholen, 220 S.E.2d 190, 197 (N.C. Ct. App. 1975) (350 mile restriction enforced). As to the requirement that Defendants may not operate a competing business within six (6) miles of any other Meineke franchise, this Court has enforced nearly-identical provisions in similar cases. See Meineke Car Care Centers, Inc. v. Glover, 3:10-cv-667, 2011 WL 240462 (W.D.N.C. Jan. 21, 2011), aff'd in part and dismissed in part, 11-1127, 2011 WL 4037412 (4th Cir. Sept. 13, 2011). North Carolina has enforced national territory restrictions in covenants not to compete when the plaintiff company does business nationally. Harwell Enter., Inc. v. Heim, 276 N.C. 475, 173 S.E.2d 316, 320 (1970) (North Carolina Supreme Court found that for a company engaged in nationwide activities, nationwide protection would appear to be reasonable and proper to protect the company's confidential and proprietary business information).

Additionally, the covenant does not violate public policy. In United Labs., Inc. v. Kuykendall, 370 S.E.2d 375, 380 (N.C. 1988), the Court observed that "it is as much a matter of public concern to see that valid [covenants] are observed as it is to frustrate oppressive ones." Furthermore, North Carolina courts have held that much broader covenants not to compete do not violate public policy. See e.g., Triangle Leasing Co., Inc., 327 N.C. 224 (enforcing a non-compete clause that restrained defendant from soliciting the business of plaintiff's known customers in any area in which the company operated for a period of two years).

Therefore, since Meineke is able to establish that the covenant not to compete is reasonably necessary to protect legitimate interests, is reasonable with respect to time and territory, and does

-8-

Case 3:11-cv-00369-FDW-DCK   Document 19   Filed 10/12/11   Page 8 of 11

not interfere with the interest of the public, Meineke demonstrates that it is likely to succeed on the merits.

Second, Meineke has made a clear showing that it will likely suffer actual, imminent, and irreparable harm. Meineke's goodwill and reputation with consumers will be damaged if Defendants continue to violate the covenant not to compete and to use Meineke's proprietary information. Additionally, Meineke will also be harmed if Defendants use the knowledge, manner, and training obtained through the former Franchise Agreement relationship to gain customers within the restricted area. Defendants will be able to draw customers away from other Meineke franchises by offering services at lower prices because Defendants are no longer paying franchise fees. This will unfairly burden other Meineke franchisees with unfair competition. Furthermore, if Defendants were permitted to continue violating the non-compete agreement, it would undermine the value of all of the non-compete agreements Meineke has with other franchisees.

Third, the balance of equities tips in the favor of Meineke because the damage that would result if Defendants were allowed to continue to violate the covenant outweighs any harm to Defendants from enforcement of the covenant. Defendants specifically agreed to abide by the covenant when they signed the Franchise Agreement with Meineke. Thus, any harm they suffer is a consequence of their failure to abide by the Franchise Agreement.

Fourth, granting the preliminary injunction is in the public interest because the public could be deceived and confused by Defendants' unauthorized use of the Meineke name. Further, Defendant would continue to unfairly compete with Meineke's authorized area franchisees.

In light of the foregoing, the Court <u>grants</u> Meineke's motion for preliminary injunction as to this claim.

## CONCLUSION

-9-

Because Plaintiff Meineke has established all four elements needed to obtain a preliminary injunction for both of its claims, this Court **GRANTS** Meineke's motion for a preliminary injunction and enjoins Defendants Vincent and Dina Bica from their continued use of Meineke's trademark and their breach of the covenant not to compete. Defendants shall immediately comply with this Order, and the injunction shall run one year from the date Defendants begin compliance. See Baskin-Robbins, Inc., v. Golde, No. 5:99-cv-102, 2000 WL 35536665 (E.D.N.C. May 25, 2000) (Britt, J.) (Holding that injunction begins with date of court order because "The court believes that, to allow defendants to ignore their covenant not to compete and then to escape the consequences of that covenant while plaintiffs attempt to enforce it through the judicial process, would provide a windfall to defendants and unnecessarily penalize plaintiffs.")

Specifically, Defendants are **ORDERED** as follows:

1. To cease and refrain for a period of one year from the date they begin compliance with such covenant not to compete from directly or indirectly (such as through corporations or other entities owned or controlled by them), owning a legal or beneficial interest in, managing, operating or consulting with: any business performing exhaust, brakes, or shocks and struts services at the premises of former Center No. 167 located at 92 Main Street, Norwalk, CT 06851 or within six (6) miles of former Center No. 167 or within six (6) miles of any other Meineke Center existing as of the date that Center 167 was terminated;

2. Cease using and/or remove and/or have removed any names, marks, signs, forms, advertising, manuals, computer software, supplies, products, merchandise and all other things and materials of any kind which are identified or associated with the Meineke name, logo, marks or trade dress, or which contain a name, logo, mark or

trade dress confusingly similar to the Meineke name, logo, marks or trade dress including, but not limited to, the black and yellow Meineke signage that lists Meineke's services.

3. Do everything required by the telephone company, including but not limited to, the payment of all outstanding telephone bills and the signing of all relevant telephone authorization transfer documents, to release or transfer to Meineke the telephone numbers (203) 846-4221 and (203) 842-2145 now being used by Defendants' business located at 92 Main Street, Norwalk, CT 06851 that has been advertised in conjunction with Meineke's marks.

4. Counsel is further directed to immediately proceed with conducting an initial attorneys' conference and submitting the requisite report in accordance with the Federal Rules of Civil Procedure, the Local Rules, and the Standing Orders for the Honorable Frank D. Whitney (see 3:07-mc-47 (Doc. No. 2)).[2]

IT IS SO ORDERED.

Signed: October 12, 2011

Graham C. Mullen
United States District Judge

---

[2] The form may be found on the Court's homepage at the following address: www.ncwd.uscourts.gov/Documents/Forms/whitneyform.pdf